# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| GENERAL MOTORS CORP., | : | |
|    Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 06-2195 |
| SCHNEIDER LOGISTICS, INC., | : | |
|    Defendant/Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EXEL LOGISTICS, INC., | : | |
|    Third-Party Defendant. | : | |

## Memorandum and Order

YOHN, J.                                                                July ___, 2008

General Motors Corporation ("GM") brings this diversity action against Schneider

Logistics, Inc. ("SLI") for breach of a logistic services contract (the "GM-SLI Agreement").  GM

alleges that SLI breached its contractual duties to obtain comprehensive general liability ("CGL")

insurance naming GM as an additional insured, to submit a covered claim to its insurer, and to

ensure that its contracting carrier Exel Logistics Corporation ("Exel") acquired requisite

insurance naming SLI as an additional insured.  GM has filed a motion for leave to file an

amended complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure and SLI has filed

a motion for judgment on the pleadings pursuant to Rule 12(c).  For the reasons set forth below,

the court will grant GM's motion and will grant in part and deny in part SLI's motion.

**I.  Factual and Procedural Background**[1]

GM and SLI entered into the GM-SLI Agreement in December 2000.  (Compl. ¶ 6;

Compl. Ex. A, Agreement for Logistics Services Between Schneider Logistics, Inc. and General

Motors Corp. Service Parts Operations.)  The agreement became effective January 1, 2001 and

contains a choice of law provision providing for the application of Michigan law to interpret the

contract.  (Compl. ¶ 6; GM-SLI Agreement § 14.10.)  Through the agreement, SLI contracted to

provide GM with transportation, distribution, and logistics services.  (Compl. ¶ 6.)  GM-SLI

Agreement § 6.1[2] also required SLI to obtain and maintain CGL insurance with coverage limits

of not less than $5,000,000 per incident and to provide a certificate evidencing the insurance and

---

[1] For purposes of the present motion, the court accepts as true GM's allegations of fact in the Complaint.  *See, e.g.*, *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  The court also notes that the factual allegations of the original Complaint and Amended Complaint are identical.  The differences between the two complaints reflect changes to GM's allegations of SLI's obligations under the GM-SLI Agreement and SLI's liability under the procured CGL insurance policy.

[2] GM-SLI Agreement § 6.1 states:
> During the term of this Agreement SLI shall maintain and evidence insurance in the following types and amounts:
> . . . .
> b) Comprehensive general liability insurance, including contractual liability coverage with minimum limits of not less than $5,000,000 per occurrence combined single limit for personal injury and property damage.
> . . . .
> Before services are started, SLI shall furnish [GM] or its designated agents with insurance certificate(s) evidencing such insurance and endorsement. . . .  Each certificate shall set forth the amount of coverage, policy number and date of expiration, and name General Motors Corporation as an additional insured. . . .  Such insurance shall be primary coverage to any other insurance which may be available to [GM].

naming GM as an additional insured.  Under the GM-SLI Agreement, each party also

indemnified the other for its own negligence.[3]

Pursuant to the GM-SLI Agreement, SLI obtained a CGL insurance policy from Liberty

Mutual Insurance Company (Policy No. RG2-741-002093-051) covering the period from March

1, 2001 to March 1, 2002.  (Compl. Ex. E, CGL Policy.)  The cover page of the CGL policy

notes, "This policy is a fronting policy with a $1,000,000 limit and a deductible of $1,000,000.

Liberty Mutual does not intend to provide any insurance with this policy."  (Compl. Ex. E, CGL

Policy Cover Page.)  The policy included an "Additional Insured–Blanket Endorsement" which

states:

> WHO IS AN INSURED is amended to include as an insured any person or
> organization for whom you have agreed in writing to provide Liability insurance, but
> only with respect to liability arising out of your operations or premises owned by or
> rented by you.

(Compl. Ex. E, CGL Additional Insured–Blanket Endorsement.)  SLI further procured excess

liability insurance from Vigilant Insurance Company (Policy No. 7968-07-22) for up to

$5,000,000 per incident.  (Compl. Ex. E, Excess Liability Policy.)

SLI was to contract with carriers pursuant to a Master Transport Services ("MTS")

Agreement that supplemented the GM-SLI Agreement.  On April 29, 2002, SLI entered into an

agreement with Exel (the "SLI-Exel MTS Agreement"), whereby SLI obtained the services of

---

[3] GM-SLI Agreement § 9.1 states:
> Each party shall defend, indemnify, and save the other party . . . harmless
> from and against any . . . suit or action (including reasonable attorneys' fees) arising
> out of injuries to or the death of any person or persons, including the employees of
> each party hereto, . . . to the extent caused by the negligence acts, and for the
> omission of the party in their performance of this Agreement.  Neither party assumes
> any liability under this Section for any occurrence to the extent that is the result of
> the negligence acts, and omissions of the other party. . . .

Exel as a carrier.  (Compl. ¶ 7; Compl. Ex. B, Master Transportation Services Agreement.)  The SLI-Exel MTS Agreement required Exel to maintain CGL insurance with a minimum coverage limit of not less that $1,000,000 per incident, "name SLI as a certificate holder on each of the . . . insurance policies," and "cause its insurance company to issue an insurance certificate to SLI evidencing the foregoing coverage."  (Compl. ¶ 19; Compl. Ex. B, SLI-Exel MTS Agreement § 5.)[4]

During the course of the GM-SLI Agreement, Exel employee Patrick Waldron was injured after slipping and falling on an oily spot in the trailer of a truck he was driving while transporting GM's freight.  (Compl. ¶ 8.)  On August 4, 2003, Waldron and his wife filed suit (the "Waldron action") against only GM in the Court of Common Pleas of Philadelphia County, asserting tort claims for negligence and loss of consortium arising from injuries Patrick sustained in the accident.  (*See id.*; Compl. Ex. C, *Patrick Waldron et al. v. Gen. Motors Corp.*, No. 1655 (C.P. Phila. Apr. Term 2003).)  GM successfully removed the Waldron action to the United States District Court for the Eastern District of Pennsylvania.

_____

[4] SLI-Exel MTS Agreement § 5 provides:
> [Exel], at [Exel]'s expense, shall maintain the following minimum insurance requirements during the term of this Agreement and each Transportation Schedule:
>
> (a)   Broad form commercial general liability insurance, including contractual liability coverage for all liability assumed by [Exel] under this Agreement and each Transportation Schedule, with minimum limits of liability of not less than one million dollars ($1,000,000) per occurrence combined single limit for bodily injury and property damage.
>
> . . . .
>
> . . .  [Exel] shall, prior to providing transportation and related services pursuant to this Agreement, name SLI as a certificate holder on each of the foregoing insurance policies and shall cause its insurance company to issue a certificate to SLI evidencing the foregoing coverage.

4

After the Waldron accident, GM requested that SLI's insurance broker furnish a two-page certificate of insurance on November 19, 2003.  The certificate listed the CGL coverage limit as $1,000,000 and the excess liability coverage as $5,000,000.  (Compl. Ex. E, Certificate of Ins.)[5] The certificate named GM as an additional insured for claims or suits arising out of SLI's negligence.  (*Id.*)  Subsequently, GM referred the action to SLI, and SLI demanded that Exel defend and indemnify SLI and GM in the Waldron action.  (Compl. ¶ 21; Compl. Exs. D & F.) Exel had not, however, named SLI as an additional insured under Exel's insurance policy and refused to defend and indemnify SLI and GM in the Waldron action.  (Compl. ¶¶ 22-23; Compl. Ex. G.)  Although GM denied the allegations of the complaint in the Waldron action, GM and the Waldrons settled the lawsuit in the amount of $1,350,000, and GM incurred defense costs of $54,455.08.  (Compl. ¶ 13.)

On May 24, 2006, GM filed a Complaint against SLI.  SLI moved to dismiss for improper venue pursuant to Rule 12(b)(3) and for failure to state a claim pursuant to Rule 12(b)(6) and moved to transfer the case pursuant to 28 U.S.C. § 1404.  The court denied SLI's motions on October 17, 2006.  SLI then filed and subsequently amended the present motion for judgment on the pleadings.  After opposing the motion for judgment on the pleadings, GM filed a motion for leave to file an amended complaint.  The court addresses both motions herein.

---

[5] The first page of the certificate states:  "This certificate is issued as a matter of information only and confers no rights upon the certificate holder other than those provided in the policy.  This certificate does not amend, extend or alter the coverage afforded by the policies described herein."  (Compl. Ex. E, Certificate of Ins.)  The second page states:  GM is "included as an additional insured as respects operations of Schneider Logistics, Inc., but only as respects claims or suits arising out of negligence of Schneider Logistics, Inc., its employees and anyone Schneider is legally liable for while acting in the course of Schneider's business."  (*Id.*)

## II. Discussion

### A. GM's Motion for Leave to File an Amended Complaint

GM moves for leave to file an amended complaint.  In the Amended Complaint, GM amends its theory of SLI's liability in Count I in four ways.  First, in the original Complaint, GM alleged that the "underlying Waldron claim arose out of the negligence of Exel, therefore Schneider is legally liable for the negligent conduct of Exel." (Compl. ¶ 33.)  GM now alleges that SLI "had a contractual duty under the [GM-SLI] Agreement to provide comprehensive general liability insurance coverage covering [GM] for bodily injury claims allegedly caused in whole or in part by the negligence of [GM], or by the negligence of [SLI], or by the negligence of [Exel]." (Am. Compl. ¶ 33.)  Second, GM adds the express claim the that the CGL policy procured by SLI from Liberty Mutual "explicitly disclaims any intent to provide insurance" to the original Complaint's allegation that the limit and deductible on the fronting policy were both $1,000,000.  (*Id.* ¶ 34.)  Third, GM specifies in the Amended Complaint that the excess policy does not name GM as an additional insured, although it removes the original allegation that the CGL policy does not name it as an additional insured.  (*Id.* ¶ 35.)  Fourth, in the original Complaint, GM alleged breach because SLI failed "to maintain comprehensive general liability insurance with minimum limits of not less than $5,000,000 per occurrence" and failed to name GM "as an additional insured on its policy, as required by the Agreement." (Compl. ¶ 35.)  Now, GM also asserts an alternative theory, previously raised in its opposition to SLI's motion for judgment on the pleadings, that SLI "assumed and breached its de facto duty as the insurer / underwriter of a fronting policy."  (Am. Compl. ¶ 36.)

Pursuant to Rule 15(a), a party may amend its pleading with the other party's consent or with leave of court, which the court "shall freely give when justice so requires." Amendments to a complaint pursuant to Rule 15 are "liberally granted" and "rest within the sound discretion of the trial court." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983); *see also Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984) ("[T]he district court's discretion to deny leave to amend" is limited by the "liberal amendment philosophy" of the Federal Rules of Civil Procedure.). The court should grant leave in the absence of undue delay, bad faith, undue prejudice to the opposing party, or futility of the amendment. *See Adams*, 739 F.2d at 864 (citing *Foman v. Davis*, 371 U.S. 178 (1962)); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citing *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 833 (3d Cir. 1978)).

SLI opposes GM's motion for leave to file an amended complaint because (1) of GM's undue delay in filing the motion, (2) of undue prejudice against SLI, and (3) the amendments are futile. First, SLI argues that the motion was unduly delayed because GM relies on information and documents in its possession since May 24, 2006, when the original Complaint was filed. "The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "In fact, delay alone is an insufficient ground to deny leave to amend." *Id.* (citing *Cornell & Co.*, 573 F.2d at 823). Nonetheless, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams*, 739 F.2d at 868. Delay becomes undue after the movant has forgone previous opportunities to amend a complaint or where the interests of judicial economy or of

finality of litigation are implicated, such as after the court has granted summary judgment to the nonmoving party. *See Cureton*, 252 F.3d at 273 (citations omitted).

Here, GM offers two reasons to justify the timing of its motion: (1) to "conform its Complaint to what [SLI] claims will be the evidence that the underlying accident arose out [of] GM's negligence," and (2) "to specify the language and effect of the insurance policies procured by [SLI]." (Pl.'s Mem. Supp. Mot. For Leave To File Am. Compl. 4.) Considering the validity of these justifications and the early stage of the litigation, GM's motion for leave to amend does not implicate foregone opportunities, judicial economy, or the interest in finality, so SLI has not met its burden in demonstrating undue delay.

Second, SLI argues that the motion should be denied because SLI will be unduly prejudiced by the short time remaining in the discovery period and by the fact that GM has not complied with GM-SLI Agreement § 12, which creates as a condition precedent to judicial resolution that the parties attempt a mutual resolution of any dispute. "Prejudice to the non-moving party is the 'touchstone' " in determining whether to deny leave to amend a complaint. *Lorenz*, 1 F.3d at 1414 (citation omitted). Merely claiming prejudice will not lead to denial of leave to amend, however. *See Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of the V.I., Inc.*, 663 F.2d 419, 426 (3d Cir. 1981). The nonmoving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present factors or evidence which it would have offered" if plaintiff's amendment had been timely. *Id.*

Regarding SLI's discovery argument, the proposed Amended Complaint appears to raise no additional discovery matters, as the major issue remains how to interpret the obligations of

GM-SLI Agreement § 6 and SLI's compliance therewith.[6]  The Amended Complaint raises no new facts and refers to no new documents; it merely asserts additional theories of SLI's liability—namely that SLI was liable regardless of fault in the Waldron action and that SLI's status as the insurer/underwriter of its CGL policy rendered it liable for GM's Waldron defense and settlement.  SLI cannot argue that it is unduly prejudiced by these additions, as they relate directly to the contractual duties and policies already at issue and because it has addressed some of these legal arguments in its reply to GM's opposition to the motion for judgment and will have additional opportunities to make necessary legal arguments as the litigation progresses.  SLI has not demonstrated that it would be unfairly disadvantaged or otherwise deprived of the opportunity to present evidence based on the limited remaining discovery period.  Moreover, the court will freely grant an extension of time for additional discovery, if needed.

Regarding compliance with GM-SLI Agreement § 12, both the original Complaint and Amended Complaint allege that GM has complied with GM-SLI Agreement § 12.  While SLI may raise this as an affirmative defense or counterclaim based on GM's breach of the contract, it is not a ground to reject the amended pleading.  Furthermore, SLI has not produced any specific allegations of GM's noncompliance with § 12 or of resulting detriment to SLI, nor has it suggested that GM used the amendment process to circumvent that section.  Aside from cursory assertions, SLI has not pointed to any specific circumstances demonstrating prejudice.  Therefore, SLI has not alleged undue prejudice sufficient to justify denial of GM's motion for leave to amend.

---

[6] The issue of fault regarding the Waldron action was already incorporated into the original Complaint because GM alleged Exel's fault and is at most ancillary to the primary dispute regarding SLI's contractual obligations.

Third, SLI argues that GM's amendment will be futile because it is (1) time barred, and (2) not a claim for which GM is entitled to relief under Michigan law.  These arguments are unavailing.  A claim is futile and leave to amend may be denied properly "where the amendment would not withstand a motion to dismiss."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Massarsky*, 706 F.2d at 125; *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

SLI argues that GM's "fronting policy" claim is barred by Michigan's six-year statute of limitations on breach of contract actions.  *See* Mich. Comp. Laws § 600.5807.[7]  Under Michigan law, "a cause of action accrues when a breach of contract occurs."  *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1133 (6th Cir. 1995); *see also Jacobs v. Detroit Auto. Inter-Ins. Exch.*, 309 N.W.2d 627, 630-31 (Mich. Ct. App. 1981).  Under the Amended Complaint, GM alleges that SLI breached the GM-SLI Agreement when it procured inadequate insurance and failed to name GM as an additional insured.  GM possessed the right to secure a certificate of insurance, evidencing the insurance SLI procured, before SLI started its logistics work and thus before Waldron's injuries occurred on May 7, 2001.  Arguably, GM could have learned of the contract claim at numerous times outside of the six-year limitations period, which would have expired on May 7, 2007.  GM argues that because the certificate disclaims any legal

---

[7] Michigan Complied Laws § 600.5807 states:

No person may bring or maintain any action to recover damages or sums due for breach of contract . . . unless, after the claim first accrued to himself . . ., he commences the action within the periods of time prescribed by this section.
. . . .
(8) The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract.

significance aside from the underlying policies, it could not learn of the breach until it discovered those policies in this litigation.  The court need not decide whether the statute of limitations period has expired, however, because, as discussed below, the timing of GM's filing of the Amended Complaint relates back to the filing of the original Complaint on May 24, 2006.

The Amended Complaint is timely filed because it relates back to the original, timely filed Complaint.  *See Urrutia v. Harrisburg County Police Dep't*, 91 F.3d 451, 457 (3d Cir. 1996).  Rule 15(c) governs the relation back of complaints and "aims to ameliorate the harsh result of the strict application of the statute of limitations."  *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003) (citations omitted).  Under Rule 15(c)(1), the allegations of an amended complaint relate back to the date of the original complaint when:  "(A) the law that provides the applicable statute of limitations allows relation back; or (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  As noted above, Michigan law provides the applicable statute of limitations, and that law also contains a relation back doctrine.  Under Michigan law, relation back applies if "the amendment arises out of the conduct, transaction, or occurrence alleged in the original pleading sought to be amended."  *Doan v. Chesapeake & O. Ry. Co.*, 171 N.W.2d 27, 30-31 (Mich. Ct. App. 1969).  Thus, Michigan applies the same relation back standard as Rule 15(c)(1)(B).

Analyzing the Amended Complaint under Rule 15(c)(1)(B), the court concludes that its allegations relate back to the date of filing of the original Complaint and are therefore not time barred.  In *Bensel v. Allied Pilots Ass'n*, the Third Circuit held the amended complaint relates back when the "amendments . . . restate the original claim with greater particularity or amplify

11

the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading . . . .  In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings."  387 F.3d 298, 310 (3d Cir. 2004).  When determining whether a common core of operative facts exists, the court looks at "whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds."  *Id.* (citing *Michelsen v. Penney*, 135 F.2d 409, 416-17 (2d Cir. 1943)).

The Amended Complaint in this case alleges the same core of operative facts as in the original Complaint, and SLI had fair notice of the general factual underpinnings of GM's claims.  In the original Complaint, GM contended that SLI failed in its contractual duty to procure the required insurance protecting GM from the Waldron action.  The general factual theory as alleged in the original Complaint was that SLI failed to procure the insurance coverage required under GM-SLI Agreement § 6 and failed to comply with that provision's requirements regarding additional insureds.  Thus, SLI was on notice that the case involved its compliance with contractual obligations under § 6, especially its procurement of insurance conforming to § 6, the naming of GM as an additional insured on the certificate, and the submission of the Waldron claim to Liberty Mutual.  The Amended Complaint involves the same general factual situation.  The only additions are that GM now alleges that § 6 required SLI to obtain insurance covering GM's negligence and that SLI was obligated to accept GM's claim as the de facto insurance underwriter of the fronting policy.  The underlying operative facts regarding the language of the contract, the specific insurance policies that SLI actually procured, and SLI's refusal to accept GM's Waldron claim have not changed.  SLI had fair notice of these issues and theories, and,

12

thus, SLI's statute of limitations argument fails because the Amended Complaint relates back to the original Complaint.

SLI next argues that the claims in GM's Amended Complaint would be futile because they are without merit under Michigan law.  As discussed in the next section, the new claims in the Amended Complaint are not futile because they survive a motion for judgment on the pleadings, which has the same standard as a 12(b)(6) motion.[8]

Thus, SLI has not demonstrated that GM's motion for leave to file an amended complaint resulted from undue delay, would result in undue prejudice, or is futile.  The court will therefore grant GM's motion for leave to file an amended complaint and address the Amended Complaint in its consideration of SLI's motion for judgment on the pleadings.[9]

### B.  SLI's Motion for Judgment on the Pleadings

#### 1.  Standard of Review

The standards for deciding a motion for judgment on the pleadings pursuant to Rule 12(c) and a motion to dismiss pursuant to Rule 12(b)(6) are identical.  *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).  The court must accept as true all well-pled allegations of fact in the

---

[8] Count III, for which the court will grant SLI's motion for judgment on the pleadings, is not affected by the amendments.

[9] In this case, the court may address the pending motion for judgment on the pleadings with regard to the Amended Complaint without additional briefing because both parties have exercised the opportunity to address the Amended Complaint; GM briefed the theories proposed in the Amended Complaint in its response to SLI's motion for judgment on the pleadings, and SLI responded to those contentions.  Furthermore, SLI's argument concerning futility necessarily requires the court to address the overlapping consideration of whether the Amended Complaint would survive its motion for judgment on the pleadings.  (*See* Def.'s Opp'n Mot. Leave to File Am. Compl. 4-5, 5 n.3 (expressly incorporating the reasoning of SLI's motion for judgment on the pleadings).)

complaint and any reasonable inferences that may be drawn in the plaintiff's favor therefrom. *Nami*, 82 F.3d at 65; *see also Allah v. Al-Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000); *Jablonski*, 863 F.2d at 290. The court may also consider exhibits attached to the complaint, matters of public record, and an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).[10] A plaintiff must show a "plausible" or "reasonably founded hope" of success, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969, 1974 (2007) (internal quotation marks and citations omitted), although "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (internal quotation marks and citation omitted). "[J]udgment will not be granted 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Jablonski*, 863 F.2d at 290 (quoting *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)).

---

[10] Ordinarily, where a party attaches extrinsic evidence to a Rule 12(c) motion, the court must convert the motion into one for summary judgment under Rule 56. Fed. R. Civ. P. 12(c). Where, however, an attached document is integral to the plaintiff's claims and its authenticity is not disputed, the opposing party "obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196-97. In this case, both GM and SLI make numerous references to the GM-SLI Agreement, the SLI-Exel MTS Agreement, and the SLI-obtained insurance policies, all of which were attached to the pleadings and are integral to GM's Complaint. Neither party contests the authenticity of these documents. Hence, the court is free to consider these documents without converting this motion into one for summary judgment.

### 2.     GM's Breach of Contract Claims

GM asserts breach of the GM-SLI Agreement.  The essential elements for breach of contract under Michigan law are:  "1) the existence of a contract between the parties, 2) the terms of the contract, 3) that defendant breached the contract, and 4) that the breach caused the plaintiff injury."  *Timmis v. Sulzer Intermedics, Inc.*, 157 F. Supp. 2d 775, 777 (E.D. Mich. 2001) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)).  GM and SLI agree that the GM-SLI Agreement constituted a contract and that the terms of the contract were contained therein.  (*See, e.g.*, Def.'s Am. Mot. J. Pleadings 3, 7-8; Pl.'s Opp'n Mot. J. Pleadings 4.)

Because GM alleges that SLI breached the GM-SLI Agreement, the court must interpret that contract's terms.  Under Michigan law, the "construction and interpretation of a contract present questions of law."  *Saint Clair Med., PC v. Borgiel*, 715 N.W.2d 914, 918 (Mich. Ct. App. 2006).  The court's goal is to determine and enforce the parties' intent based on the plain language of the agreement.  *Id.*  "It is axiomatic that if a word or phrase is unambiguous and no reasonable person could differ with respect to application of the term or phrase to undisputed material facts, then the court should grant summary disposition to the proper party . . . ."  *Id.* (internal quotation marks and citations omitted).  If reasonable minds could differ, however, a question of fact exists and summary disposition is inappropriate.  *Id.*

In the Amended Complaint, GM alleges three theories of breach:  (1) SLI breached GM-SLI Agreement § 6.1 by failing to maintain CGL insurance with minimum limits of not less than $5,000,000 per occurrence and by failing to name GM as an additional insured (Am Compl. ¶ 36); (2) SLI breached the GM-SLI Agreement by failing to submit the Waldron action to Liberty

15

Mutual under its CGL policy or failing to accept the claim as the insurer/underwriter of the fronting policy, which was GM's primary insurance coverage for the action (*id.* ¶¶ 36, 39-41); and (3) SLI breached the GM-SLI Agreement by selecting Exel, a carrier that failed to procure additional insurance coverage required under the GM-SLI Agreement and the SLI-Exel MTS Agreement (*id.* ¶¶ 44-45).  SLI argues that it did not breach the GM-SLI Agreement on any of these grounds and that, because the Waldron action was based on GM's sole negligence, SLI was not responsible for insuring the accident.

### a.  Count I:  Failure to Maintain CGL Insurance with Contractual Minimums and to Name GM as an Additional Insured

SLI claims that it is entitled to judgment as a matter of law as to Count I because it fulfilled its contractual duties by procuring the required insurance and by producing a certificate of insurance naming GM as an additional insured on SLI's insurance policies.  Because reasonable minds could disagree regarding the terms of SLI's obligations under GM-SLI Agreement § 6 and SLI's compliance therewith, SLI has not shown that it is entitled to judgment as a matter of law.

First, the GM-SLI Agreement required SLI to procure CGL insurance with a minimum limit of $5,000,000 per incident.  SLI acquired CGL insurance from Liberty Mutual with a limit of $1,000,000 and excess liability insurance from Vigilant for up to $5,000,000.  (Compl. Ex. E, Certificate of Ins., CGL Policy, Excess Liability Policy.)  The Liberty Mutual CGL policy is a "fronting policy," which by its terms does not provide insurance because its deductible is $1,000,000, exactly the same as its coverage limit.  The policy expressly states that "Liberty Mutual does not intend to provide any insurance with this policy."  (Compl. Ex. E, CGL Policy Cover Page.)

GM argues that the fronting policy was not insurance and that the excess liability insurance does not fulfill the CGL requirement. SLI counters that nothing in the GM-SLI Agreement prohibited the use of a fronting policy or excess liability insurance to fulfill its obligations. According to SLI, fronting policies are designed to satisfy the requirements of contracts, obligating the insurer to pay for all covered claims, while the reinsurer retains the risk that it will have to repay the insurer. In addition, SLI argues that the fronting policy defines the terms of the underlying insurance for the excess liability policy. The court concludes that at this stage of litigation, SLI has not shown that no issue of material fact remains as to whether a fronting policy, such as the Liberty Mutual CGL policy, that expressly disclaims to provide insurance and an excess liability policy, such as the Vigilant policy, satisfy the terms of its contractual obligations under GM-SLI Agreement § 6. Thus, SLI has not met its burden of showing that it is entitled to judgment as a matter of law.

Second, GM-SLI Agreement § 6.1 required SLI to issue GM a certificate naming GM as an additional insured on each insurance policy procured pursuant to the agreement, including CGL insurance with a minimum limit of $5,000,000. SLI argues that the "certificate of insurance generated by SLI's insurance producer expressly provided the required information for both of SLI's insurers." (Def.'s Reply 4, 10.) GM contends that the certificate of insurance named GM as an additional insured, but only pursuant to the terms of the underlying policy. For the CGL policy, the Additional Insured–Blanket Endorsement obligated Liberty Mutual to insure any organization for which SLI agreed to provide insurance. (*See* Compl. Ex. E, Certificate of Ins.) GM qualified as an additional insured under this provision because the GM-SLI Agreement obligated SLI to provide CGL insurance for GM. The excess liability policy, however, failed to

expressly cover GM as an additional insured and contained no blanket coverage endorsement. (*See* Compl. Ex. E, Excess Liability Policy, Named Insured Definition Endorsement.)  Pursuant to the express terms of the certificate, which directs the court and parties to the underlying policies, SLI has shown only that GM was an additional insured for the $1,000,000 CGL fronting policy, but not for the $5,000,000 excess liability policy.  Thus, SLI has not shown that, as a matter of law, it fulfilled its contractual duty to acquire CGL coverage with a minimum limit of $5,000,000 and to certify GM as an additional insured for that coverage.  Because SLI has failed to meet is burden with respect to Count I, the court will deny SLI's motion for judgment on the pleadings as to that count.

SLI argues alternatively that, irrespective of the terms of the policies as discussed above, GM is not entitled to make a claim under the CGL and excess liability policies because the negligence alleged in the Waldron action was solely GM's and the GM-SLI Agreement did not require SLI to procure insurance for GM's negligence.  According to SLI, designation as an additional insured protects GM from SLI's negligence, which is covered under the policies, but not from GM's own negligence, which is not covered.  Thus, SLI argues that it was only obligated to deliver to GM a certificate naming GM an additional insured on whatever policies it procured, regardless of their content, ostensibly negating any harm to GM from SLI's alleged breach.[11]

----

[11] SLI points to the certificate as expressly preventing coverage of GM's negligence.  The certificate of insurance naming GM as an additional insured states that "[t]he certificate holder is included as an additional insured as respects operations of [SLI], but only as respects claims or suits arising out of negligence of [SLI] . . . .  The additional insured has no rights in addition to those of [SLI] under this policy."  (Compl. Ex. E, Certificate of Ins.)  The certificate, however, also states:  "This certificate is issued as a matter of information only and confers no rights upon the certificate holder other than those provided in the policy.  This certificate does not amend,

SLI's argument fails for the purposes of the present motion because the GM-SLI Agreement is ambiguous as to whether the parties intended to cover GM's negligence.[12]  Thus, SLI has not shown that reasonable minds could not differ and that it is thus entitled to judgment as a matter of law.[13]  GM alleges in the Amended Complaint that the parties intended the GM-SLI Agreement to cover GM's negligence.  Evidence presently before the court, namely the GM-SLI Agreement and the CGL policy, plausibly support this conclusion.  The GM-SLI Agreement's structure provides credence to GM's assertion that the parties intended to cover GM for its own negligence.  According to GM, the indemnification clauses in § 9.1 indemnify GM for SLI's negligence, and the insurance clauses in § 6.1 provide for insurance of GM's negligence.[14]  GM argues that § 6 and § 9 are independent obligations and that reading § 6.1 as

extend or alter the coverage afforded by the policies described herein." (*Id.*)  Although the certificate purports to limit coverage, the court must look to the underlying insurance policies to determine their coverage, and at a minimum GM has alleged noncompliance and presented the policies as evidence supporting its claims.  Thus, the certificate does not provide a basis for the court to grant SLI judgment on the pleadings.

[12] GM-SLI Agreement § 6.1 states that SLI was to obtain $5,000,000 of CGL coverage and obtain a certificate naming GM as an additional insured.  The ambiguity arises because the contract does not expressly state whether the CGL policy was to cover only SLI's negligence; both SLI's and GM's negligence; or SLI's, GM's, and Exel's negligence.

[13] SLI argues that GM drafted the contract, so its terms should be interpreted against GM.  This assertion is without foundation, as GM-SLI Agreement § 14.1 states that "[t]he parties agree that the terms of this Agreement have been negotiated between the parties and that there shall be no presumption against either party in case of an ambiguity in the terms of this Agreement."

[14] On the other hand, SLI argues that the GM-SLI Agreement only requires SLI to obtain insurance for its own operational negligence, that either Exel or GM is responsible for the negligence here, that § 2.2.1 relieves SLI of any liability for Exel's negligence, and that § 9.1 relieves SLI of liability for GM's negligence.  SLI's assertions raise a dispute regarding the interpretation of the GM-SLI Agreement.  Because reasonable minds could differ, judgment on the pleadings is inappropriate.  Furthermore, even if SLI's assertions are correct, SLI is nonetheless arguably in breach for failing to obtain $5,000,000 in CGL coverage naming GM as

19

requiring insurance to cover only SLI's negligence would render § 9.1 duplicative, since both sections would then protect GM from the same risk—that of SLI's negligence.

Second, Liberty Mutual's CGL policy's Additional Insured–Blanket Endorsement's language supports GM's contention.  The endorsement defines an additional insured "to include as an insured any person or organization for whom [SLI has] agreed in writing to provide Liability insurance, but only with respect to liability arising out of your operations."  (Compl. Ex. E, Additional Insured–Blanket Endorsement.)  Although the parties have not directed the court to a case in Michigan directly on point,[15] the "arising out of your operations" language has been nearly universally interpreted to cover the additional insured for the additional insured's negligence.  *See, e.g.*, *Mikula v. Miller Brewing Co.*, 701 N.W.2d 613 (Wis. Ct. App. 2005) (citing cases supporting the majority rule); 2 Allan D. Windt, Insurance Claims & Disputes § 11:30 (4th ed.), *available at* INCD § 11:30 (Westlaw updated Mar. 2007); *see also* 4 Philip L. Bruner & Patrick J. O'Connor, Bruner & O'Connor on Construction Law § 11:58, *available at* BOCL § 11:58 (Westlaw updated May 2007).[16]  The common interpretation of this endorsement

---

an additional insured.

[15] SLI directs the court to *Consumers Power Co. v. Beech Construction, Inc.*, No. 176257, 1996 WL 33363020 (Mich. Ct. App. June 11, 1996).  The Michigan Court of Appeals in that case refused to grant summary judgment on a breach of contract theory because of the unresolved issue of the plaintiff's sole negligence; however, the issue of the plaintiff's sole negligence was relevant only because a specific, construction-related Michigan statute prevented insuring the plaintiff for plaintiff's sole negligence.  *See id.* at *1 (citing Mich. Comp. Laws § 691.991).  That statute is not relevant to this case.

[16] SLI's reliance on *Harbor Insurance Co. v. Lewis*, 562 F. Supp. 800 (E.D. Pa. 1983), is misplaced because the endorsement in that case differs substantively from the one in the present case.  The endorsement in *Harbor* stated that "[i]t is agreed that the insurance afforded by this policy shall apply to the following additional insureds but only to the extent of liability resulting from occurrences *arising out of negligence of Reading Company* and or its wholly owned

20

thus strongly supports GM's claim that the CGL policy covered GM's negligence, if any, that resulted in an injury to an Exel employee who was performing contract work for SLI pursuant to the GM-SLI Agreement and the SLI-Exel MTS Agreement.

Overall, SLI has not shown that it is entitled to judgment as a matter of law as to Count I. GM has pleaded that SLI breached its obligation to provide $5,000,000 in CGL insurance naming GM as an additional insured, and the GM-SLI Agreement arguably required such insurance to cover GM's negligence related to SLI's logistic activities.  Because SLI has not shown that reasonable minds could not differ about the application of its contractual obligation to the present facts, it is not entitled to judgment as a matter of law, and the court will deny SLI's motion for judgment on the pleadings as Count I.[17]

### b.  Count II:  Failure to Submit the Waldron Claim to Liberty Mutual

SLI claims that it is entitled to judgment as a matter of law as to Count II because it was under no contractual duty to submit any claim on GM's behalf to its insurance provider.  GM alleges that GM-SLI Agreement § 6.1 contractually obligates SLI to submit GM's claims to SLI's insurer because the CGL insurance required by the agreement was primary coverage for GM. GM-SLI Agreement § 6.1 provides that "[s]uch insurance shall be primary coverage to any other

---

subsidiaries." *Id.* at 802 (emphasis added).  The *Harbor* decision interpreted that specific contract language and did not articulate a broader rule covering all CGL additional insureds.  *See Meridian Mut. Ins. Co. v. Cont'l Bus. Ctr.*, No. 04-1639, 2005 WL 856935, at * 6-7 (E.D. Pa. Apr. 14, 2005).

[17]  GM notes that whether GM or Exel was responsible for Waldron's accident is not a matter that can be determined by a motion for judgment on the pleadings.  The court's current decision disposes of the need to resolve whether GM's allegations of Exel's negligence also preclude judgment on the pleadings.

insurance which may be available to [GM]."[18]  SLI's CGL policy requires SLI, the named

insured, to submit notice of claims to Liberty Mutual.  (*See* Compl. Ex. E., CGL General

Amendatory Endorsement § A ¶ 3, Conditions 14 ¶ 2(a), Definitions 1.)  GM argues that as the

primary insured of the fronting policy, SLI breached its duty to put Liberty Mutual on notice of

the claim.  GM suggests that SLI refused to submit the claim because, although Liberty Mutual

was authorized to defend and settle the claim under the fronting policy,[19] Liberty Mutual could

immediately seek reimbursement from SLI for the entirety of the settlement.  In the alternative,

GM argues that SLI was obligated to accept the Waldron claim as the underwriter of the fronting

policy when SLI refused to submit the claim to Liberty Mutual, the primary insurer.

The court concludes that while the GM-SLI Agreement does not expressly require SLI to

submit claims on GM's behalf, reasonable minds could easily conclude that SLI incurred an

implied duty to submit such claims under § 6.1, especially in light of notification requirements in

the CGL policy that SLI purchased.  *See, e.g.*, *People v. Vanreyendam*, No. 266511, 2007 WL

1201832, at * 3 (Mich. Ct. App. Apr. 24, 2007) (finding an implied term of good faith and fair

dealing where the term did not "replace or contradict an express term of a contract").  Similarly,

reasonable minds could differ regarding SLI's obligation to accept the claim after it chose to

comply with the GM-SLI Agreement through a fronting policy, leaving it exposed to liability for

---

[18] The GM-SLI Agreement is otherwise silent regarding SLI's duty to submit insurance claims on behalf of GM.

[19] The Deductible Liability Insurance Endorsement authorizes Liberty Mutual to "pay any part or the entire deductible amount to effect settlement of any claim or suit."  (Compl. Ex. E, CGL Policy, Deductible Liability Ins. Endorsement.)

claims it was obligated to insure.  GM has thus pled a viable theory of contractual liability against SLI for failure to submit the claim.

SLI argues that, as a matter of law, its failure to submit the Waldron claim cannot be a basis for breach of contract because the contract did not require it to indemnify GM's negligence. In *Peeples v. City of Detroit*, the Michigan Court of Appeals interpreted a contract provision requiring the defendant to procure insurance as providing "a fund to pay those amounts for which the [defendant] becomes liable.  The scope of the liability is governed by the indemnification provision, unless the contract clearly provides otherwise."  297 N.W.2d 839, 845 (Mich. Ct. App. 1980).  *Peeples* does not apply to this case, however, because the plaintiff's underlying claim in *Peeples* was for indemnification, and the court considered the evidentiary significance of the insurance procurement provision to that claim.  Contrary to SLI's argument, *Peeples* clarified that the defendant's "failure to obtain the requisite insurance may be the basis of a separate claim for breach of contract."  *Id.*  In this case, GM has based its claims on just such a theory of breach of contract to procure insurance, so SLI's argument is unpersuasive.

SLI additionally contends that GM's argument that SLI was contractually obligated to procure insurance covering GM's negligence is contrary to the law of the case.  Under the law of the case doctrine, once a court has decided an issue, it will not relitigate that issue in the same case.  *See Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1981).  In deciding SLI's earlier motion to transfer venue, the court stated that the instant action would require the testimony of the nonparty Waldron action witnesses because "if GM's negligence was the sole cause of the events underlying the Waldron action, the SLI and its carrier, Exel, would not be liable for the Waldron action and SLI's breach of contract would not have caused GM's injury."

23

*Gen. Motors Corp. v. Schneider Logistics, Inc.*, No. 06-2195, 2006 WL 2987785, *6 (E.D. Pa. Oct. 17, 2006). Application of the law of the case doctrine to this statement by the court would be inappropriate in this case for two reasons. First, the court issued this statement as part of its discussion of potential necessary witnesses as one of the many factors it considered when disposing of SLI's motion to transfer venue; thus, the conclusion cannot be read as a broader statement of law limiting GM's potential theories of liability. Second, the court has decided to grant GM leave to file the Amended Complaint, which expressly alleges that its own negligence does not preclude recovery, reducing the relevance of GM's alleged negligence to its breach of contract claim, and rendering the court's earlier language less categorical.[20] Thus, the language cited by SLI as the law of the case is not relevant for the current purposes of analyzing GM's now-existing claims.

Because SLI has not proven that it is entitled to judgment as a matter of law, the court will deny SLI's motion for judgment on the pleadings as to Count II.

### c. Count III: Failure to Ensure that Exel Procured the Requisite Insurance and Named SLI as an Additional Insured

SLI moves for judgment as a matter of law as to Count III because it was under no contractual duty to require Exel to name SLI as an additional insured under the GM-SLI Agreement or the SLI-Exel MTS Agreement. GM does not oppose this argument in its response. The court will grant SLI's motion with respect to Count III of the Amended Complaint.

The GM-SLI Agreement required SLI to contract with a carrier using the predrafted MTS Agreement appended to the GM-SLI Agreement. The SLI-Exel MTS Agreement, which

---

[20] Nonetheless, the outcome of the court's decision on SLI's motion to transfer venue would not be different, as the Waldron witnesses were only one component of that decision.

24

conformed to the predrafted MTS Agreement, required Exel to maintain "[b]road form commercial general liability insurance, including contractual liability coverage for all liability assumed by [Exel] under this Agreement . . . with minimum limits of liability of not less than one million dollars ($1,000,000) per occurrence combined single limit for bodily injury and property damage." (Compl. Ex. B, SLI-MTS Agreement § 5(a).)  Furthermore, Exel was required to "name SLI as a certificate holder on each of the foregoing insurance policies and [to] cause its insurance company to issue a certificate to SLI evidencing the foregoing coverage." (*Id.*)  The SLI-Exel MTS Agreement does not, however, require Exel to name SLI or GM as an additional insured or require SLI to otherwise ensure Exel's compliance.

SLI argues that by having Exel name SLI as a certificate holder and, thus, ensuring the requisite coverage, SLI fulfilled its contractual obligations to GM under the GM-SLI Agreement and SLI-Exel MTS Agreements.[21]  The evidence before the court supports SLI's contention that the GM-SLI Agreement required Exel to produce an insurance certificate for purposes of information, not to add SLI as an additional insured.  Informational certificates are by far the most common type of insurance certificate, and the MTS Agreement requires the certificate for the sole purpose of "evidencing the foregoing coverage." (*Id.*)  This language expresses the parties' intent to evidence, but not extend, coverage.  This conclusion is bolstered by the noticeably different language that the parties used in the GM-SLI Agreement, which expressly

---

[21] Although SLI has not entered into evidence the certificate issued to it by Exel's insurer, which would prove that Exel obtained the required insurance, GM does not allege that SLI has failed to meet its evidentiary burden.  In fact, GM appended to its Complaint and relied on a letter evidencing that Exel's insurance existed. (Compl. Ex. G.)  GM's claim, therefore, rests solely on SLI's failure to ensure that SLI was an additional insured on the policy, about which there is no factual dispute.

required that SLI name GM an additional insured on the insurance certificate.  Although SLI carries the burden for the present motion, because GM has not opposed this portion of the motion, and because the evidence supports SLI's contention, the court will accept SLI's argument and grant SLI's motion for judgment on the pleadings for Count III.

## III.  Conclusion

For the foregoing reasons, the court will grant GM's motion for leave to file an amended complaint.  Based on the Amended Complaint, the court will grant SLI's motion for judgment on the pleadings with respect to Count III and deny it with respect to Counts I and II.[22]

An appropriate order follows.

---

[22] In its briefing to the court, GM summarily asked the court to grant summary judgment in its favor.  The court has chosen not to convert SLI's motion into a motion for summary judgment and, in any case, GM has not formally moved for summary judgment.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GENERAL MOTORS CORP., :
 Plaintiff, : CIVIL ACTION
 :
 v. : NO. 06-2195
 :
SCHNEIDER LOGISTICS, INC., :
 Defendant/Third-Party Plaintiff, :
 :
 v. :
 :
EXEL LOGISTICS, INC., :
 Third-Party Defendant. :

# Order

YOHN, J.

  AND NOW on this _____ day of July 2008, upon consideration of defendant Schneider Logistics, Inc.'s motion for judgment on the pleadings (Docket No. 32); plaintiff General Motors Corporation's response; Schneider Logistics, Inc.'s reply; and General Motors Corporation's sur-reply; and General Motors Corporation's motion for leave to file an amended complaint (Docket No. 36); Schneider Logistics, Inc.'s response; and General Motor Corporation's reply, it is hereby ORDERED that:

  1.  General Motors Corporation's motion for leave to amend is GRANTED.  General Motors Corporation is permitted to file the proposed Amended Complaint attached to its motion within ten (10) days of the date hereof.

2.      Schneider Logistics, Inc.'s motion for judgment on the pleadings is DENIED as to

Counts I and II and GRANTED as to Count III.  Judgment is ENTERED in favor

of Schneider Logistics, Inc. and against General Motors Corp. as to Count III.


            s/ William H. Yohn Jr.
            William H. Yohn Jr., Judge